FILED
United States Court of Appeals
Tenth Circuit

March 20, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KAMEISHA HAMILTON,

        Plaintiff-Appellant,

  and

VALETTA TAYLOR; DOROTHY
LAMBE; AJEENAH SPRIGGS;
DANIELLE CALLAGHAN,

        Plaintiffs,

    v.

BOISE CASCADE EXPRESS, a
division of Boise Cascade Office
Products, a corporation; SAMANTHA
MOHR, individually; ROBERT
HARPER, individually; LAURIE
JOHNSON, individually; BOISE
CASCADE OFFICE PRODUCTS
CORPORATION,

        Defendants-Appellees,

MARK HAMMONS,

        Real Party in Interest -
Appellant.

No. 06-6308

**ORDER**

Before **KELLY**, **EBEL**, and **McCONNELL**, Circuit Judges.

The opinion filed March 17, 2008, contained additional typographical errors that were not corrected in the revisions made on March 18, 2008. A corrected opinion, filed nunc pro tunc to March 17, 2008, is attached.

Entered for the Court

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**March 17, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

KAMEISHA HAMILTON,

      Plaintiff-Appellant,

  and

VALETTA TAYLOR; DOROTHY
LAMBE; AJEENAH SPRIGGS;
DANIELLE CALLAGHAN,

      Plaintiffs,

    v.

BOISE CASCADE EXPRESS, a
division of Boise Cascade Office
Products, a corporation; SAMANTHA
MOHR, individually; ROBERT
HARPER, individually; LAURIE
JOHNSON, individually; BOISE
CASCADE OFFICE PRODUCTS
CORPORATION,

      Defendants-Appellees,

MARK HAMMONS,

      Real Party in Interest -
Appellant.

No. 06-6308

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 04-CV-266-L)**

Mark Hammons (Tamara Gowens with him on the briefs), Hammons, Gowens & Associates, Oklahoma City, Oklahoma, for Appellants and for himself as real party in interest.

J. Alfred Southerland, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Houston, Texas (Jennifer L. Miscovich, Ogletree Deakins, Houston, and M. Richard Mullins, McAfee & Taft, P.C., Oklahoma City, Oklahoma, with him on the brief), for Defendants-Appellees.

Before **KELLY**, **EBEL**, and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

The district court found that Appellant, attorney Mark Hammons, "multiplied the[se] proceedings unreasonably, vexatiously, and recklessly" by filing a motion to enforce a settlement agreement that misstated opposing counsel's position without a reasonable basis, costing his opponents a needless expense of $7,974.20. It therefore levied a sanction in that amount against Mr. Hammons personally under 28 U.S.C. § 1927. Mr. Hammons appeals the award and amount of the sanction. We hold that the district court was within its discretion in finding Appellant's conduct objectively unreasonable and in determining the amount of the sanction as it did, and so affirm.

.

-2-

# I. BACKGROUND

This matter has its origins in a race and gender discrimination suit filed against Boise Cascade Office Products Corporation (Boise) by five of its employees. Three of the plaintiffs eventually reached a settlement with Boise; two pressed on, only to have their claims rejected on summary judgment.[1] The plaintiffs were represented by the law firm of Hammons & Associates (now Hammons, Gowens & Associates), of Oklahoma City, Oklahoma.

Mr. Hammons was sanctioned by the district court for a motion to enforce a settlement agreement between Boise and one of the plaintiffs. In this motion, which had no good basis, he represented to the court that Boise's counsel, J. Alfred "Alf" Southerland, had stated that Boise would not pay on the settlement until all the settling plaintiffs returned whatever company documents they had in their possession. In reality, following the explicit terms of the settlement agreement, Boise was conditioning payment only on the plaintiffs' filing of a stipulation of dismissal of their suit. Boise did request its documents back under an independent clause of the settlement agreement, but it was Mr. Hammons's firm that tried to tie together the issues of the documents, the stipulation, and the payment—demanding that Boise relinquish its claim to the documents before they would file the stipulation.

---

[1] That is the subject of an appeal now pending before this Court, *Hamilton v. Boise Cascade Express*, Nos. 06-6235 & 06-6256 (10th Cir. argued Jan. 23, 2008).

The settlement agreement at issue provided that the settling plaintiff, Valetta Taylor (a/k/a Valetta Taylor-Wright), must "sign and file with the Court a stipulation of dismissal with prejudice" of her discrimination claim against Boise "[p]rior to receipt of payment" on the settlement. Sealed App. 2. Additionally and independently, each was to return any Boise property "possessed by the Employee and all other documents and other items obtained through discovery during the course of this suit" to Boise's counsel "within thirty days of the execution" of their settlement agreements. *Id.* at 4. For nearly a month beginning in April 2006 Mr. Hammons's firm and Boise traded letters and emails in which the plaintiffs sought payment on Ms. Wright's settlement and Boise insisted, pursuant to the agreement, on the filing of her stipulation of dismissal before they would do so.

So, on May 3, 2006, Mr. Southerland wrote to Hammons's firm and, referring to the role of his co-counsel, made explicit: "We will fund upon your filing of the stipulation. Rick has the checks for distribution, and is simply awaiting notice of filing from the court." *Id.* at 44. Despite this and similar representations, Mr. Hammons's firm never filed the stipulation of dismissal. Instead, Mr. Hammons began to insist that Boise drop its demand for the return of its documents in exchange for Ms. Wright's filing of the stipulation.

Boise refused, sticking by the agreement as Ms. Taylor had signed it. On May 11, Mr. Hammons wrote to Mr. Southerland with a draft copy of a motion he

intended to file—the Motion to Enforce the Settlement Agreement whose factual allegations are the heart of this case. The motion was to request relief in the form of an order "direct[ing] the Defendants to comply with the agreement [*i.e.*, pay up] without conditioning compliance with a return of documents being held by and for Hamilton and Callaghan." App. 66. Crucially, the motion was to aver:

> Such settlement agreement has not been concluded because the Defendants have stated that they will not pay the settlement amount unless Ms. Taylor-Wright not only returns those Boise documents in her possession (there are none) but also causes to be returned those documents which are being held for the use of two non-settling Plaintiffs—Ms. Hamilton and Ms. Callaghan.

*Id.* at 62.

The next day, May 12, a Friday, Mr. Southerland faxed back a letter stating that "[t]he motion mischaracterizes Defendants' efforts to ensure that your clients comply with the terms of the settlement agreements, and conveniently ignores your firm's efforts—as late as last week—to unilaterally implement changes to the agreements executed by your clients . . . ." *Id.* at 71. He asked that if Mr. Hammons filed his motion, he attach this letter.

At 4:17 PM that day, Mr. Hammons emailed back, again repeating his claim that Boise was trying to condition payment of the settlement funds on the return of the documents: "[W]e have told you that we will authorize a Stipulation of Dismissal but we have explained that we cannot do that when you have told us that you will still not issue the check until [settling plaintiffs] give up their

-5-

documents." *Id.* at 73. At 4:51 PM, Mr. Hammons filed the Motion to Enforce, without changes but with Mr. Southerland's letter attached, and then went home.

Seven minutes later, after Mr. Hammons had left for the weekend, Mr. Southerland faxed back, explicitly denying Hammons's statement just quoted. The fax was copied to Mr. Hammons's personal email address. In it, Mr. Southerland explained that the stipulation of dismissal and the return of documents "are separate obligations," and remarked that it was in fact Mr. Hammons who "ha[d] conditioned payment upon the waiver of [Boise]'s right to obtain the return of documents. That was your choice and condition, not ours." *Id.* at 111. Mr. Hammons never bothered to read this fax, and he never withdrew his Motion to Enforce or sought to correct its incorrect claim that Boise had stated it was refusing to issue payment on the settlement until its documents were returned.

Boise cross-moved to enforce the settlement agreement, asking for the filing of the stipulation of dismissal before it would pay on the settlement, and seeking return of its documents. Boise also moved for sanctions against plaintiffs' counsel. The district court denied Mr. Hammons's motion, granted the cross-motion, and ordered Mr. Hammons to show cause why he should not be sanctioned "for attempting to mislead the court as to defendants' position on payment of the Taylor-Wright settlement and for unreasonably and vexatiously

multiplying the proceedings by filing Plaintiff's Motion to Enforce the Settlement Agreement." *Id.* at 124, 126.

At a hearing August 3, 2006, Mr. Hammons was unable to point the court to anything in Boise's communications that could be taken as tying the return of the documents to payment of the settlement, except for the fact that "each time the issue of payment was mentioned simultaneously there was the statement demanding the return of the documents." *Id.* at 226. Even though his motion averred that Boise had "*stated* that they will not pay the settlement amount" until the documents were returned, Mr. Hammons admitted at the hearing that Boise had never made such a statement and allowed that his "choice of language on that was inappropriate." *Id.* at 229. He admitted that he would never have filed his motion had Boise's Friday-afternoon fax come sooner, acknowledged that he should have supplemented his motion after receiving it, and apologized for not having read it.

The district court held that Mr. Hammons's conduct merited sanction. Ruling orally at the hearing, the court found that

> this entire motion and the representations in it certainly . . . caused opposing counsel excessive costs and attorney's fees, and opposing parties excessive costs and attorney's fees, and has caused the Court a great many unnecessary hours spending [sic] trying to resolve this issue, when really the only legitimate dispute, it would appear, which the Court should have been involved in, was the return of the documents.

*Id.* at 282–83. Significantly, whereas the show cause order suggested that Mr. Hammons may have "attempt[ed] to mislead the court," the district court's ruling contained no such finding; rather, the court found simply that the statement was in error, and that counsel should have known it. The court stated that there wasn't "any question that any reasonable person, much less an attorney of [Mr. Hammons's] learned skills, . . . could have interpreted the May 3rd letter and email" other than as stating that Boise would fund the settlement upon receipt of Ms. Taylor's stipulation of dismissal without regard to the documents. *Id.* at 281. "There could be no misinterpretation of their language." *Id.* Thus, when the judge followed up with a written opinion on August 9, 2006, he explained that "no reasonable attorney could have misinterpreted Southerland's May 3, 2006 e-mail." *Id.* at 143.

The court accordingly found that Mr. Hammons "ha[d] multiplied the proceedings unreasonably, vexatiously, and recklessly" by filing the Motion to Enforce the Settlement Agreement, making sanctions appropriate under 28 U.S.C. § 1927. *Id.* As to the amount of the sanction, the district court directed the parties to confer and attempt to arrive at a stipulated figure, but they were unable to agree. Boise submitted an accounting of its expenses and Mr. Hammons replied with his objections. In a second written opinion, the court sustained certain objections, rejected others, and calculated the final award at $7,974.20. This appeal ensued.

-8-

## II. IMPOSITION OF SANCTIONS

### A. Standard

Section 1927 "targets the vexatious and unreasonable multiplication of proceedings." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006). The statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. We have held that § 1927 does not require a finding of bad faith: "Although subjective good faith on the part of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct, we are entitled to demand that an attorney exhibit some judgment. To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with 'an empty head and a pure heart' is not responsible for the consequences." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc) (internal quotation marks omitted). So any conduct that, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court," is sanctionable. *Id.*

We review an award of sanctions under § 1927 only for abuse of discretion. *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278-79 (10th Cir. 2005). Where the exercise of that discretion depended on the

resolution of a purely legal issue, however, we approach such a question *de novo*. *See Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006).

## B. Discussion

Appellant has, as we count them, seven reasons why the district court erred in imposing sanctions: (1) The district court erroneously applied a negligence standard; (2) his conduct was not "sufficiently egregious" to warrant sanctions, Aplt's Br. 15; (3) the court's order does not contain specific factual findings; (4) he was entitled to rely on Mr. Southerland's failure to dispute the facts in his draft of the motion; (5) the court improperly required him to "follow[] the steps which the Court would have preferred," *id.* at 20; (6) his conduct was "provoked" by Mr. Southerland's "'misconduct'" in stating that further communications would be futile, *id.* at 21; and (7) opaquely, "it cannot be determined from the Court's Orders whether it would have imposed any sanctions or the same sanctions were [Hammons's] only failing or if the Court had applied the *White* factors in making its determination," *id.* at 21–22 (sic) (citing *White v. Gen. Motors Corp.*, 908 F.2d 675 (10th Cir. 1990)).

*1.*—The court did not apply a negligence standard. Although Appellant points to a handful of statements the district judge made that seem related to negligence, our review assures us that these were informal oral statements, and their context demonstrates that they were made by way of suggestion. For instance, the judge told Mr. Hammons, "[I]f there is any question, instead of

-10-

exchanging all the letters and e-mails, a simple picking up the telephone and making sure the positions of the parties, then if you want to reduce it to writing fine." App. 284. The judge was not, however, finding Mr. Hammons liable for inadvertently using email instead of the telephone. Rather, these remarks came at the end of the hearing, after the judge had made his oral ruling and explained the reasons therefor. The court was offering advice how such problems could be avoided in the future.

The remainder of the judge's oral ruling and written opinion makes clear that his ruling was not based on a finding of negligence. At the hearing, he gave his view of the evidence: "[Y]ou've misrepresented [Boise's] position and the terms of the settlement agreement. . . . It's very disingenuous, Mr. Hammons . . . ." *Id.* at 281–82. That covers more than negligence. For it was not simply that Mr. Hammons had misstated Boise's position; it was that he attributed to Boise a variant of the exact frivolous position—that the return of documents and payment of the settlement were linked under the agreement—which his firm had repeatedly and entirely without justification attempted to force upon Boise. Thus the district court found that Mr. Hammons's "bald-faced statement" in the Motion to Enforce was made "all the more galling because Hammons was the one who conditioned filing of the dismissal—and therefore payment of the funds to his client—on modification of the parties' agreement with respect to return of the documents."

*Id.* at 143. This, the court said, was "unreasonabl[e], vexatious[], and reckless[]"; it was a claim with "no plausible basis." *Id.*

2.—For the same reasons, we concur with the district court, as a matter of its exercise of discretion, that Mr. Hammons's conduct was sufficiently problematic to warrant the award of sanctions. He urges that there was but one "isolated incident" of misconduct. Aplt's Br. 15 Even if, however, there was only one false statement, it grew out of a long and vituperative series of communications in which Mr. Hammons and his firm repeatedly took positions in diametric opposition to the express terms of the settlement agreement their client had signed. Moreover, Mr. Southerland's response to the draft of the Motion to Enforce—"The motion mischaracterizes Defendants' efforts to ensure that your clients comply with the terms of the settlement agreements"—put Mr. Hammons on notice that the motion's averments about Boise's position were incorrect. If this were not enough, there was Mr. Southerland's Friday-afternoon fax, sent minutes after Mr. Hammons filed his motion, which could scarcely have been clearer in denying Mr. Hammons's claims and suppositions. The failure to read this fax and amend or withdraw the motion was not reasonable.

Mr. Hammons's conduct is in nowise among the most striking or egregious to reach our Court. Yet sanctions are not reserved for the worst offenders. This is particularly true of sanctions under § 1927, which, as we explain below, are levied to compensate the victims of dilatory practices, not as a means of

punishment. For this reason, finding a protracted course of vexatious conduct is unnecessary. The mere imposition of a sanction under this section does not, without more, necessarily reflect on the moral character of the offender. Sanctions may be appropriate, rather, in response to "*objectively* unreasonable" conduct. *Braley*, 832 F.2d at 1512 (emphasis added). Where, "pure heart" notwithstanding, an attorney's momentarily "empty head" results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible. *Id.* Having thoroughly reviewed the entire context of the conduct at issue, we cannot say that the district court abused its discretion in finding the conduct at issue in this case sanctionable.

*3.*—Appellant's next complaint is based upon the district court's alleged failure to provide sufficient explanation of the sanction. On the contrary, the district court's oral and written explanations are thorough, specific, and well-considered. To the extent Appellant argues that not all of his many contentions were explicitly addressed, we can only respond that not all of them warranted explicit response. As we explained in *Braley*:

> When a court imposes sanctions under 28 U.S.C. § 1927 or any other authority, it must sufficiently express the basis for the sanctions imposed to identify the excess costs reasonably incurred by the party to whom they will be due. If a trial court imposes sanctions, specific findings are required for several reasons. First, because there must be an express basis for imposition—"multiplicity" under § 1927, for example—the court must identify the extent of the multiplicity

resulting from the attorney's behavior and the costs arising therefrom. Second, because the person sanctioned is entitled to notice and opportunity to be heard, the objectionable conduct must be identified sufficiently to make the opportunity to respond meaningful. Finally, the reasons for the decision must be in a form reviewable by the appellate courts.

832 F.2d at 1513. That is, the court must state with specificity "the excess costs providing a basis for the sanctions," "the conduct leading to the sanctions," and "the reason for the sanction." *Sally Beauty Co. v. Beautyco, Inc.*, 372 F.3d 1186, 1190 (10th Cir. 2004) (citing *Braley*, 832 F.2d at 1513). We have nowhere imposed a requirement that a sanctioning court discourse at length on every possible consequence of its order or on every argument against it.

*4.*—Mr. Hammons's sanctionable conduct was not excused, as he argues next, by Boise's purported "failure to dispute the facts" of his motion in its reply to the draft. As we have spelled out above, counsel for Boise, Mr. Southerland, did in fact object that "[t]he motion mischaracterizes Defendants' efforts to ensure that your clients comply with the terms of the settlement agreements." App. 71. We know of no rule that places the onus in a situation like this on an opposite party to object with specificity, or to do so preemptively before the motion is filed.

Appellant cites authority to the effect that a party has a duty to mitigate its damages, and cannot seek a compensatory sanction award for expenses it might reasonably have avoided incurring. Boise, he says, "had a duty to speak out."

-14-

Aplt's Br. 19. We disagree. The duty recognized by the courts is to minimize damage *after* counsel's violation of § 1927. *See generally* GEORGENE M. VAIRO, RULE 11 SANCTIONS 461–64, 546–54 (3d ed. 2004). There is no general "good Samaritan" duty to save an attorney from himself. To the extent courtesy urges doing so, we think that Mr. Southerland's communications—the letter before Mr. Hammons filed the motion and the fax sent almost simultaneously with the filing—were entirely sufficient to meet any ethical obligation he may have had.

*5.*—Next, Appellant argues that the district court actually sanctioned him simply "for not following the steps which the Court would have preferred." Aplt's Br. 20. Indeed, the district court outlined several things he could have done to avoid this imbroglio, like pick up the phone and call opposing counsel. But the basis for the sanction was not what Mr. Hammons *failed* to do, it was what he *did* do.

*6.*—In Mr. Southerland's 4:58 PM Friday fax, sent just after Mr. Hammons had filed the motion, he explained at length his problems with Mr. Hammons's conduct and positions. He continued, "I have offered reasonable solutions to this issue, but have been rebuffed at every turn," and indicated that he would seek to enforce the settlement agreement to get Boise's documents back. App. 111. In closing, Mr. Southerland wrote, "I do not see the utility in further discussions with your firm. We have asked you and your clients to file the stipulation of dismissal so we can pay Ms. Taylor and [for] the return of the documents and

property belonging to my clients. For some reason, you do not believe that agreements are to be honored. We will ask the court for enforcement and an award of sanctions." *Id.* The document was also sent directly to Mr. Hammons's personal email address. He told the district court he did not bother to read it because his associate, Nicole Snapp-Holloway, told him it was a "nasty fax" that "said that no further communications between the firms would be of any utility." App. 239.

Appellant now implies that this was "'misconduct'" on Mr. Southerland's part, because "Defendants cannot properly refuse to communicate to resolve an issue and then seek sanctions arising out of that failure." Aplt's Br. 21. But the message itself would have "resolve[d]" the issue if Mr. Hammons had read it and taken it seriously. And it did not say, "Do not bother to read *this* message"; it said, *further* communication will not be useful. Sending this message was certainly not misconduct.

*7.*—"Finally," Appellant argues, "even if the failure to not timely read and the post-filing email and correct the filing with the Court warranted Sec. 1927 sanctions, it cannot be determined from the Court's Orders whether it would have imposed any sanctions or the same sanctions were this Counsel's only failing or of the Court had applied the *White* factors in making its determination." Aplt's Br. 21–22 (sic). To the extent we can decode this, it is dealt with in the next Part.

### III. AMOUNT OF SANCTIONS

Appellant next contends that the district court erred in assessing sanctions in the amount of $7,974.20. Specifically, he assigns three errors: (1) the district court did not employ the proper standards for establishing a sanction amount; (2) the court should have used a lodestar method rather than actual expenditures to determine what attorney's fees were recoverable; and (3) the court failed to address deficiencies and inconsistencies in the billing records presented by Boise for recovery and failed to "expressly determine the nexus between the tasks listed and the motion to enforce the settlement agreement," Aplt's Br. 34.

### A. Standard for Determining Fee Amount

Appellant attempts, without explicitly so indicating, to import several precedents concerning Rule 11 of the Federal Rules of Civil Procedure into the context of 28 U.S.C. § 1927. We reject the endeavor.

Principally, he relies on *White v. General Motors Corp.*, 908 F.2d 675 (10th Cir. 1990), as establishing a sort of parsimony principle for sanctions: that "[t]he appropriate sanction should be the least severe sanction adequate to deter and punish" the offender. *Id.* at 684; *accord, e.g.*, *Barrett v. Tallon*, 30 F.3d 1296, 1302–03 (10th Cir. 1994). Yet the text of § 1927, unlike that of Rule 11, indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders. Rule 11 expressly provides that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the

-17-

conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Section 1927, on the other hand, allows a court to require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of [vexatiously multiplicative] conduct." The statute fits much more comfortably with a victim-centered approach, and we would be reluctant to supply a parsimony provision where Congress has not done so. *Compare Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of Fox Masonry & Expert Restorations*, 140 F.3d 661, 667 (7th Cir. 1998) ("[W]here the [§ 1927] sanctions were tailored as well as possible to compensate the other party for time lost to [attorney's] antics, we will not require the court to consider [his] ability to pay.") *with Samuels v. Wilder*, 906 F.2d 272, 276 (7th Cir. 1990) (Easterbrook, J.) ("Rule 11 and § 1927 are *sanctions* rules, not compensation devices.").

We recognize that the Conference Committee's report on the 1980 amendment to § 1927 indicated that that amendment was made, in part at least, "to deter unnecessary delays in litigation." H.R. Rep. No. 96-1234, at 8 (1980) (Conf. Rep.), *reprinted in* 1980 U.S.C.C.A.N. 2781, 2782. The report, however, concerns an amendment which broadened the previously awardable "excess costs" to include "excess costs, expenses, and attorneys' fees." Antitrust Procedural Improvements Act of 1980, Pub. L. No. 96-349, § 3, 94 Stat. 1154, 1156. The original law dates to 1813, and we know of nothing that would illumine whether

the Thirteenth Congress intended it as a compensatory or a deterrent mechanism. *See* Act of July 22, 1813, ch. 14, § 3, 3 Stat. 19, 21 (allowing court to consolidate related cases and to require attorney who "shall appear to have multiplied the proceedings in any cause before the court so as to increase costs unreasonably and vexatiously . . . to satisfy any excess of costs so incurred"). Moreover, it would make no difference to our holding if Congress' purpose was indeed a deterrent one. A purpose of deterrence is as easily satisfied, if not more easily, by an interpretation in accord with the text of the statute—allowing recovery of all excess costs, expenses, and fees—as by the interpretation urged now, which would needlessly impute to the statute a limitation on the amount recoverable. And even deterrence, unlike punishment, does not ordinarily call for a parsimony principle.

On this basis, we also reject Appellant's contention that the court's sanction award improperly failed to comply with our directive in *White* that a district court consider such factors as the minimum amount that will serve as a deterrent and the attorney's ability to pay. *See White*, 908 F.2d at 684–85. *White* dealt with sanctions under Rule 11, which is not a compensatory mechanism.

### B. Method of Determining Fee Amount

Second, Appellant advances that attorney's fees awarded under § 1927 should be calculated by a lodestar method, which would limit the amount recoverable to the prevailing rate charged by local counsel. In support, he cites

practice under several civil-rights fee-shifting statutes. *See, e.g.*, *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005) (applying 42 U.S.C. § 12205); *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (applying 42 U.S.C. § 1988(b)), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987). Several district courts have also used the lodestar method for calculating fees under § 1927. *E.g.*, *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 389 F. Supp. 2d 443, 447 n.4 (D. Conn. 2005) ("The lodestar method is applicable in assessing awards for attorneys fees under 28 U.S.C. § 1927 as it is when awarding fees under fee-shifting statutes such as 42 U.S.C. § 1988."); *Ricks v. Xerox Corp.*, No. 93-2545-JWL, 1995 WL 584444, at * 1 (D. Kan. Sept. 29, 1995).

The district court in this case rejected this argument, explaining that § 1927 refers to "attorneys' fees reasonably incurred" while the civil-rights statutes refer to "a reasonable attorney's fee." App. 198. We would not so easily assign much importance to this variance in language. However, we have not found, nor have the parties shown us, any authority actually confronting the question whether § 1927 provides straight fee recovery or a lodestar-limited recovery.

We hold that the choice belongs to the district court, in the exercise of its discretion, which method to apply in a given case. Section 1927, of course, limits recovery to fees "*reasonably* incurred." This does not only require a court to lop off hours unreasonably incurred: bringing in expensive out-of-town hired guns to

respond to a frivolously multiplicative motion would not be reasonable, and in such a case using the lodestar method would be the better exercise of discretion. On the other hand, a party who has already been the victim of vexatious and dilatory tactics should not heedlessly be revictimized by requiring him to introduce evidence to establish the prevailing local rate for a certain type of litigation. Furthermore, the typical § 1927 situation will differ from the civil rights cases, where it is sensible to encourage litigants at the outset to select reasonably priced counsel. A § 1927 movant has already chosen his counsel—at what he ordinarily anticipates will be his own expense—and one who chose what he considered appropriate counsel should not be obliged to procure new, cheaper lawyers just to deal with a filing that is, after all, sanctionable.

Finding nothing in the record to make us think applying the actual-fee method here was an abuse of the district court's wide discretion in matters of sanctions, we reject this claim of error.

### C. Propriety of Fee Amount in This Case

Third, Appellant charges that the district court "did not attempt to explain which costs were truly 'excess' and thus subject to award under Sec. 1927." Aplt's Br. 26. He states that opposing counsel's use of "block billing," *id.* at 27, that is, "lumping multiple tasks into a single entry of time," *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1214 (10th Cir. 2000), disguises the true nature of the items billed for. Mr. Southerland produced two accountings of the time spent on

this multiplicative proceeding—a chart sent to Mr. Hammons during the attempts to negotiate and an affidavit submitted to the court—and Appellant now argues that the district court failed to make express findings resolving the lack of specificity of these documents and inconsistencies between the two. Additionally, he presents a series of objections to specific billing entries, for instance that the claimed time spent reviewing his May 11 email and the draft of the Motion to Enforce was "not extraordinary although it seems somewhat longer than necessary to review the documents in question." Aplt's Br. 31.

The district court heard these same objections. It explained that "only fees and expenses incurred as a result of [the Motion to Enforce] are compensable," and accordingly rejected certain hours and reduced others where Mr. Southerland's affidavit indicated time was spent pursuing the filing of Ms. Taylor's stipulation of dismissal with prejudice. App. 196. The court also disallowed time charged for clerical functions and hours charged as travel time for Mr. Southerland's trip from Houston to Oklahoma City to attend the show-cause hearing on the sanction.

We cannot find an abuse of discretion here. At the outset, we observe that matters concerning, for example, how much time was properly spent carrying out a certain litigation task are far better determined by the district court, which is intimately familiar with the parties, the attorneys, and the complete course of the litigation, than by an appellate court. The district court therefore enjoys wide

-22-

discretion in making decisions of the sort challenged here. The court here performed a conscientious review of Mr. Southerland's billing, separating by fractions of hours time spent on tasks arising out of the Motion to Enforce from time that would have been spent without it. It explained why it was granting certain objections and rejecting others. And although the court's written opinion did not expressly state how the hours assessed were spent, the court implicitly adopted Mr. Southerland's affidavit except to the extent of the sustained objections. Where, as here, a district court's findings and reasons are made plain to the attorneys involved and to a reviewing tribunal, and especially where the contents of a sealed document are involved, the requirement of "specific findings" is satisfied by an opinion referencing the record documents with sufficient clarity. *See Braley*, 832 F.2d at 1512. Upon our own review, we find no merit to any of Appellant's challenges to the opinion or to the specifics of the billed time.

## IV. CONCLUSION

The judgment of the United States District Court for the Western District of Oklahoma is **AFFIRMED** as to both the imposition and the amount of the sanction.