**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

B. WILLIS, C.P.A., INC.,

Plaintiff,

v.

PUBLIC SERVICE COMPANY OF
OKLAHOMA,

Defendant-Appellee,

and

BNSF RAILWAY CORPORATION;
UNION PACIFIC RAILROAD
COMPANY,

Defendants.

------------------------------

WILLIAM THOMAS DICKSON,

Attorney-Appellant.

No. 12-5062
(D.C. No. 4:04-CV-00163-TCK-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

William Thomas Dickson is the lawyer who represented B. Willis, C.P.A., Inc. (Willis) in various state and federal suits against Public Service Company of Oklahoma (PSO) and other entities concerning PSO's condemnation of an easement on Willis's property to construct a rail spur to deliver coal to a power plant. Mr. Dickson appeals from an order of the district court granting PSO's request for sanctions under 28 U.S.C. § 1927. We have jurisdiction under 28 U.S.C. § 1921, and we affirm.

## I.

The district court's sanction order came at the conclusion of more than two decades of litigation between Willis and various entities, including PSO, in the state and federal courts. The numerous suits, in each of which Mr. Dickson represented Willis, are well-known to the parties and outlined in detail in *B. Willis, C.P.A., Inc., v. BNSF Ry. Corp.*, 531 F.3d 1282 (10th Cir. 2008) and the magistrate judge's report and recommendation issued on March 14, 2012.

The suit underlying this appeal "stems from two consolidated cases Willis commenced after failing to obtain any relief in his previous three federal actions." *Id*. at 1293. In the first case, "Willis sued BNSF . . . asserting state law tort and contract claims . . . on [its] continued belief that BNSF was wrongfully possessing the easement across [its] property." *Id*. BNSF removed the case to federal court.

- 2 -

The second suit was filed by Willis in federal court, "this time asserting a claim under the Interstate Commerce Commission Termination Act . . . against BNSF [and others including] PSO, and claims under 42 U.S.C. § 1983, as well as state law tort and property claims, against PSO and BNSF." *Id*. at 1294 (footnote omitted). Again, Willis alleged that the "continued use of the easement across [its] property was wrongful." *Id*.

While the appeal was pending in *Willis*, the portion of the state-court condemnation case concerning PSO's necessity of condemning the easement and its use of the same during the litigation was finally resolved. As we explained, "[t]hose state proceedings finally determined not only that PSO had established a public necessity justifying its condemnation of an easement across Willis' property, but also that PSO's and BNSF's possession of the easement during the state condemnation proceedings was lawful." *Id*. at 1294-95 (footnote omitted). We thus concluded that because the state courts had finally determined that PSO established a public use that necessitated the condemnation of the easement "and that PSO's and BNSF's possession and use of the easement during the state condemnation proceedings was lawful[;] [t]he state courts' decisions finally resolving these two issues preclude Willis from pursuing the claims it is asserting in this federal action, with two exceptions." *Id*. at 1297.

"The[] two exceptions are 1) Willis' due process/equal protection claim, to the extent that claim is based upon a theory other than Willis rearguing that PSO

unlawfully possessed and used the easement during the state condemnation proceeding, and 2) Willis' trespass claim alleging PSO removed limestone and coal from below the surface easement." *Id*. at 1298. However, because the "state proceeding remain[ed] ongoing as to the issue of whether the compensation awarded Willis is adequate," *id*. at 1297, we agreed with the district court that the claims were not ripe and should be dismissed without prejudice, *id*. at 1305. *See Wilkinson v. Pitkin Cnty. Bd. Of Cnty. Comm'rs*, 142 F.3d 1319, 1323 (10th Cir. 1998) (per curiam) ("[W]hether an unconstitutionally improper taking occurred cannot be determined until both the taking and the compensation have been legally evaluated.").

Following our remand but before the district court had an opportunity to dismiss the claims without prejudice, Willis voluntarily dismissed its pending state-court appeal, which "ripened" the claims. But instead of litigating the two narrow claims that this court said might be plausible, Mr. Dickson asserted claims and arguments that went far beyond the narrow confines of our opinion in *Willis*. Mr. Dickson maintained this course for more than two years until the district court eventually denied Willis's motion for partial summary judgment and granted PSO's motion for summary judgment.[1]

---

[1]     Willis appealed the district court's judgment to this court. The appeal was dismissed for lack of prosecution.

In the meantime, PSO moved for attorney fees against Willis and sanctions against Mr. Dickson. PSO and Willis eventually filed a joint stipulation in which each agreed to be responsible for their own fees and costs. The district court entered an order denying PSO's motion as moot based on its settlement with Willis, but granted PSO ten days to file a separate motion for sanctions against Mr. Dickson. Because briefing was essentially complete and the magistrate judge to whom the matter had been referred had already set a hearing, PSO asked the court to reconsider the requirement to file a new motion. The court treated the motion for reconsideration as PSO having re-filed its motion for sanctions against Mr. Dickson.

The magistrate judge issued a 24-page report and recommendation on March 14, 2012, in which it granted PSO's motion and imposed sanctions against Mr. Dickson. The district court overruled Mr. Dickson's objections and entered an order on March 30, in which it adopted the magistrate judge's report and recommendation. This appeal followed.

**II.**

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[Section] 1927 does not require a finding of bad faith." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008). When dealing with a lawyer, the courts "are entitled to demand that an attorney exhibit

- 5 -

some judgment. To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with an empty head and a pure heart is not responsible for the consequences." *Id*. (internal quotation marks omitted). Therefore, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable." *Id*. (internal quotation marks omitted).

"We review an award of sanctions under § 1927 only for abuse of discretion." *Id*. But "[w]here the exercise of that discretion depended on the resolution of a purely legal issue, [] we approach such a question *de novo*." *Id*.

**III.**

**A. Jurisdiction**

Under a heading titled "The District Court Lacked Jurisdiction To Consider a Motion For Sanctions," Aplt. Opening Br. at 17, Mr. Dickson makes several arguments. First, he argues that "Section 1927 targets the vexatious and unreasonable multiplication of proceedings. Sanctions under this section are levied to compensate the victims of **dilatory** practices." *Id*. According to Mr. Dickson, he was not dilatory and not subject to sanctions. While it is correct that reach of § 1927 includes dilatory practices, *see Hamilton*, 519 F.3d at 1206 (recognizing that purpose of a 1980 amendment to the statute was to deter unnecessary delays in litigation), Mr. Dickson has not cited any authority that sanctions can be imposed only for

dilatory conduct. To the contrary, we have authorized sanctions for conduct other than delay. *See, e.g., Braley v. Campbell*, 832 F.2d 1504 (10th Cir. 1987).

Next Mr. Dickson argues "that § 1927 liability [cannot] be imposed for initiating meritless litigation [] because § 1927 covers only the multiplication of 'proceedings in any case[.]'" Aplt. Opening Br. at 17-18 (quoting § 1927). We need not address this argument because the district court did not award sanctions against Mr. Dickson for filing the complaint.

Last, Mr. Dickson complains that PSO's motion for sanctions was untimely. This contention is built on the false construct that PSO's motion was filed "eight months after the Court's final judgment." *Id*. at 20. Although we have held "that § 1927 sanctions are not untimely if sought or imposed after final judgment," *Steinert v. Winn Group, Inc*., 440 F.3d 1214, 1223 (10th Cir. 2006), we have also recognized that "resort to § 1927 should not be unnecessarily or unreasonably delayed," *id*.

We need not decide whether an eight-month delay would be unreasonable, because there was no such delay. PSO filed its motion for sanctions fourteen days after the district court entered dismissed the case on the merits. As explained above, PSO and Willis eventually filed a joint stipulation in which each agreed to be responsible for their own fees and costs and the district court entered an order denying PSO's previously filed motion as moot, but granted PSO ten days to file a separate motion for sanctions against Mr. Dickson. PSO asked the court to reconsider its order because briefing was essentially complete and the magistrate

judge had already set a hearing.  The court granted PSO's motion for reconsideration

and treated PSO's original motion for sanctions and the responses and replies as the

operative documents.  There was no unreasonable delay.

### B.  Due Process

Mr. Dickson appears to suggest that after the district court held that PSO

would not be required to file a new motion for sanctions, he was deprived of an

opportunity to respond.  He goes so far as to claim that he was required "to defend

against this unseen, non[-]existent motion in only seven days."  Aplt. Opening Br.

at 23.  This assertion is belied by the record.  Mr. Dickson filed multiple responses

over several months to PSO's motion for sanctions, not to mention his participation

in several hearings.  As such, the argument lacks merit.

Citing the two-day period between when he filed his objections to the

magistrate judge's report and recommendation and when the district court adopted

the recommendation, Mr. Dickson argues that because the court was in a jury trial,

"[t]here is simply no way the statutorily and constitutionally required *de novo* review

[by the district court] could ever have been conducted."  *Id*. at 21.  We disagree.  The

court's order states:  "Pursuant to FED. R. CIV. P. 72(b), the Court has reviewed the

record *de novo*.  After thorough consideration of [the report and recommendation]

and [Mr.] Dickson's Objections, the Court finds no reason either in law or in fact to

depart from the recommendation of [the Magistrate Judge]."  Aplt. App. at 54.

"[A] brief order expressly stating the court conducted de novo review is sufficient."

*Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996).  The order meets this test.

### C.  The Sanctionable Conduct

This court held in *Willis* that all claims against BNSF were precluded and that as to PSO, all of Willis's claims were precluded with the possible exception of "1) Willis' state law trespass claim to the extent it alleges that PSO wrongfully removed coal and limestone from beneath the surface easement; and 2) Willis' due process/equal protection claim . . . to the extent that claim is based upon allegations other than that PSO wrongfully possessed and used the easement across Willis' property during the state condemnation proceedings."  531 F.3d at 1306. But because the state court condemnation proceedings were not final, we affirmed the state court's decision to dismiss the claims without prejudice because they were not ripe.  However, before the claims could be dismissed, Willis voluntarily dismissed the state court proceedings.

Mr. Dickson's expansion of the litigation beyond what the magistrate judge concluded were the "very well defined boundaries placed on any further litigation," Aplt. App. at 39, justifies the award.  As the magistrate judge explained, "it is [Mr.] Dickson's conduct in this case, including his failure to heed the Tenth Circuit's limitations on remand, which merits the Section 1927 sanctions[.]"  *Id.*  Because Mr. Dickson's conduct was objectively unreasonable, we hold that the district court did not abuse its discretion in imposing sanctions.

### 1. Request to Add Parties

The magistrate judge recommended sanctioning Mr. Dickson for seeking leave to add PSO's parent company and its litigation counsel as additional parties. This request was made several months after this court's remand in *Willis* and more than a month after Willis's voluntary dismissal of the state court condemnation appeal. The magistrate judge concluded

> that there was no good faith basis for [Mr.] Dickson's request to add PSO's parent company and its litigation counsel. In fact, the request was so devoid of support that its only purpose could have been to further multiply the proceedings and lengthen the parties' dispute in the hope of gaining some tactical advantage; it was unreasonable and vexatious.

*Id*. at 41.

Mr. Dickson argues that the magistrate judge erroneously denied his request to add these parties and therefore his request to do so cannot form the basis for sanctions. As to litigation counsel, Mr. Dickson asserts that his claims did not become ripe until September 2008 when the state condemnation appeal was dismissed "and only then also became ripe against the agents of the corporation who committed the acts giving rise to the claims and PSO's corporate parent that supervised and directed those agents." Aplt. Opening Br. at 26. As to PSO's parent company, Mr. Dickson argued in the district court that it became the real party in interest in 2000 when it purchased PSO, and that "PSO is now just a facade, a front, a shell." Aplt. App. at 78. On appeal, he argues that "there was nothing improper about seeking to amend to add the real party in interest." Aplt. Opening Br. at 26.

Under the firm-waiver rule, a party's failure to timely object to the proposed findings and recommendations of the magistrate judge "waives appellate review of both factual and legal questions." *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (internal quotation marks omitted). As such, it is too late for Mr. Dickson to argue the merits of the decision to deny his request to add additional parties, because he did not object to the magistrate judge's report and recommendation to deny the request.

The findings and conclusions in the recommendation to deny the request to add additional parties (quoted by the magistrate judge in the recommendation for sanctions) establish beyond cavil the objectively unreasonable and vexatious nature of Mr. Dickson's conduct:

> Nothing in the Tenth Circuit's decision directs this Court to allow Willis to pursue any claims other than the two specifically [noted in *Willis*]. There is no mention of permitting additional parties or changing the nature of the claims. And neither has Willis explained the necessity of adding the additional parties. . . . While it is true that this Court and the Tenth Circuit held that Willis' § 1983 claim was unripe until the state condemnation proceedings were final, such does not mean that Willis, in making the proceeding final by dismissing his appeal of the just compensation component of the condemnation suit, can now bring the claim against parties who have never before been named in the long Jarndycian history of this dispute.

Aplt. App. at 40. As such, the magistrate judge's conclusion that "that there was no good faith basis for [Mr.] Dickson's request to add PSO's parent company and its litigation counsel," *id*. at 41, was not an abuse of discretion.

## 2. Request for Injunction

Mr. Dickson's request for a preliminary injunction was made more than five months following this court's decision in *Willis* and more than three months after Willis voluntarily dismissed the state court condemnation appeal. The request for injunctive relief was made against BNSF in an attempt to prevent it from trespassing on Willis's property. Setting aside the fact that this court had already ruled that any claims against BNSF to use the easement were precluded, *see Willis*, 531 F.3d at 1302, the magistrate judge who recommended sanctions and who also conducted the hearing on the motion for a preliminary injunction, recalled that Mr. Dickson's

> purpose in seeking an injunction against BNSF was twofold: (1) an injunction against BNSF would prevent PSO from using the easement, since BNSF was the only railroad that had access to PSO's rail spur; and (2) if it appeared to [Mr.] Dickson that his request for an injunction was going to be denied, he could file yet another motion for preliminary injunction as to PSO[.]

Aplt. App. at 42. As a result, the magistrate judge concluded that "[b]oth the request for injunctive relief and these goals were in direct contradiction to the Tenth Circuit's remand. . . . The Tenth Circuit had clearly precluded any effort by Willis to prevent PSO or BNSF from using the easement," *id.*, and that Mr. Dickson's "action was unreasonable and vexatious and multiplied these proceedings," *id.* at 43.

On appeal, Mr. Dickson does not offer any legal argument, but instead says he is confused as to how the magistrate judge reached the conclusions: "Why these [purposes] were clear to the U.S. Magistrate is unclear because neither is true. The parameters of the injunction sought were narrow so as to apply only to that portion of

- 12 -

the track across Willis' property that was located off of PSO's surface easement."
Aplt. Opening Br. at 28. However, there is no evidence that the railroad spur was
located outside the easement. More to the point, Willis's trespass claim was limited
to a claim "that PSO wrongfully *removed* coal and limestone from beneath the
surface easement." 531 F.3d at 1306 (emphasis added). Mr. Dickson's bid to obtain
a preliminary injunction for anything other than PSO's removal of coal and limestone
was objectively unreasonable and vexatious.

### 3. Motion for Partial Summary Judgment

Shortly after filing its motion for injunctive relief, Willis moved for partial
summary judgment on its trespass and § 1983 claims against PSO. The linchpin of
its request was PSO's failure to file a condemnation action under Okla. Stat. tit. 66, §
7. Section 7 speaks generally to the power of railroads (and other entities such as
PSO) but it does not set forth the means of using the power. For example, a railroad
is empowered by section 7 to acquire property to construct a railroad track, but the
mechanism for doing so is set forth in Okla. Stat. tit. 66, § 51, which was used to
acquire the easement from Willis.

Setting aside the dubious nature of the claim that a separate condemnation
action should have been filed under section 7, this court held in *Willis* that the only
possible claims were that "PSO wrongfully removed coal and limestone from beneath
the surface easement," 531 F.3d at 1306, and a "due process/equal protection
claim . . . to the extent that claim is based upon allegations other than that PSO

wrongfully possessed and used the easement across Willis' property during the state condemnation proceedings," *id*.

As the magistrate judge explained, there was no good faith basis under Oklahoma law to argue that PSO should have used section 7 to condemn the easement, and in any event, "the Tenth Circuit decision makes clear that the case was remanded for only two claims, neither of which involves the procedure used to condemn Willis' property." Aplt. App. at 44.

On appeal, Mr. Dickson says that he never argued on summary judgment that PSO should have filed a separate condemnation action under section 7. This is simply incorrect. Mr. Dickson's district court brief repeatedly stated (at least seven times) that the basis for both the trespass and § 1983 claims was PSO's failure to file a condemnation action under section 7. Further, he makes no attempt to jibe the new claim with this court's holding in *Willis*, which limited any potential relief to PSO's "wrongful[] *remov[al] [of] coal and limestone* from beneath the surface easement," 531 F.3d at 1306 (emphasis added), which refers to the harvesting of specific minerals.

### 4. Failure to Inform PSO of Willis's Desire to Settle

In August 2010, while Willis's appeal of the district court's order was pending in this court, PSO's lawyer wrote to Mr. Dickson about resolving the litigation.

- 14 -

"I am prepared to request that my client drop its motions for attorney fees and costs[2] if your client will drop the appeal and give a full and final release. . . . Please visit with your client and let me know your response." Aplt. App. at 127-28. Mr. Dickson wrote back:

> I wish to advise you that I have no such interest in settling the case under those terms. As you are aware, I have a perfected attorney's lien in this case based on a contingency fee arrangement. I would point out that if PSO were to settle around me I have the right to sue in my own right to establish what the claim would have been worth absent the settlement agreement. . . . I will contact you after I have discussed this matter further with my client.

*Id.* at 129.

But what Mr. Dickson failed to tell PSO's lawyer was that Willis wanted to accept the settlement offer. PSO learned this several days later when its lawyer received a letter from Buck Willis, the owner, stating that he told Mr. Dickson to accept the offer on the company's behalf. To move matters forward, PSO asked for Mr. Dickson's consent to communicate directly with his client. When Mr. Dickson failed to respond, PSO filed a motion to allow it to communicate directly with Willis. Mr. Dickson opposed the motion and the magistrate judge held a hearing at which Mr. Willis testified that Mr. Dickson was not authorized to send the letter rejecting PSO's offer.

---

[2] PSO was seeking attorney fees and costs against both Willis and Mr. Dickson.

The magistrate judge concluded that Mr. "Dickson's rejection of PSO's invitation to engage in settlement discussions, without the consent of his client, was unreasonable and vexatious and further multiplied these proceedings without any legitimate basis." *Id*. at 47. Mr. Dickson argues that his letter to PSO concerned only himself, and not Willis, and thus sanctions are improper. We agree that Mr. Dickson's letter states that he had no interest in settling the case. However, it was Mr. Dickson's failure to communicate Willis's desire to settle its claims and the opposition to PSO's motion to communicate directly with Willis that was objectively unreasonable and unduly multiplied the proceedings.

### D. Amount of Sanctions

PSO sought $179,154.59 as excess costs, expenses and attorney fees. The magistrate judge reduced this amount to $152,281.57 in attorney fees and $1,324.84 in expenses. Mr. Dickson argues that the magistrate judge erred in awarding any attorney fees at all because PSO's lawyers failed to sufficiently establish that the time spent was linked to the actions that formed the basis for sanctions. Mr. Dickson further argues that he provided the magistrate judge with "an itemized list of the specific billings he objected to . . . that were not related to the specific actions of Dickson that the Court asserted were sanctionable." Aplt. Opening Br. at 51. However, Mr. Dickson's failure to provide any references to the record or include the relevant documents in his Appendix prevents this court from considering this alleged error. *See* Fed. R. App. P. 28 (a)(9)(A) & (e). His argument concerning expenses

suffers from the same deficiency. He states in a conclusory fashion that "[t]he [report and recommendation] allows PSO to recover travel costs for its attorneys commuting from their office to the court house," Aplt. Opening Br. at 52, without any reference to the pleading in which he raised this objection or the amount in dispute.

There is a general argument that we are able to address, which is Mr. Dickson's contention that the award cannot stand because it is a double recovery. He argues that Willis paid PSO its attorney fees and costs as part of the settlement, and thus "it was clearly error to grant PSO a judgment against Dickson as a sanction for the same fees and costs PSO had already recovered from Willis." *Id*. at 49. We need not resolve whether PSO could recover fees and costs against both Willis and Mr. Dickson because there is no evidence that Willis paid anything to PSO; instead PSO dropped its claim for fees and costs against Willis in exchange for a release of any and all claims.

The judgment of the district court is affirmed.

Entered for the Court


Wade Brorby
Senior Circuit Judge