Gladys ARENSON et al., Plaintiffs-Appellants

v.

**CHICAGO MERCANTILE EXCHANGE et al., Defendants,**

**Board of Trade of the City of Chicago, Defendant-Appellee.**

No. 74–1329.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1974.

Decided July 11, 1975.

Rehearing and Rehearing En Banc Denied Sept. 12, 1975.

---

Aram A. Hartunian, Charles Pressman, Lawrence Walner, Edward A. Berman, Chicago, Ill., for plaintiffs-appellants.

W. Donald McSweeney, Lee A. Freeman, Jerrold E. Salzman, Aaron E. Hoffman, John J. McHugh, Robert E. Neiman, A. Charles Lawrence, James A. Velde, Samuel Weisbard, James L. Fox, Mellville B. Bowen, Jr., William R. Jentes (Kirkland & Ellis), Chicago, Ill., for appellee.

Before STEVENS and TONE, Circuit Judges, and CAMPBELL,* Senior District Judge.

CAMPBELL, Senior District Judge.

In early 1971, a number of class action antitrust suits were filed in several district courts against various commodity exchanges and their members alleging that the minimum rates of commission established by the exchanges to be charged by exchange members to non-members for the purchase or sale of commodities, and the members' observance of such minimum rates, violated Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs sought elimination of the minimum commission rates and treble damages. Pursuant to 28 U.S.C. § 1407, all cases [1] were transferred to the Northern District of Illinois and eventually all were consolidated before Judge Bauer.

Subsequently, the parties submitted a Master Settlement Agreement to the district court for approval. Under the

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. *Arenson, et al. v. Chicago Mercantile Exchange, et al.,* No. 71 C 854 (N.D.Ill.);

   *Arenson, et al. v. Board of Trade of the City of Chicago, et al.,* No. 71 C 855 (N.D.Ill.);
   *Savett v. Board of Trade of the City of Chicago, et al.,* No. 72 C 1633 (N.D.Ill.);
   *Fuller, et al. v. Board of Trade of the City of Chicago, et al.,* No. 72 C 747 (N.D.Ill.);

   *Wengert v. Board of Trade of the City of Chicago,* No. 72 C 750 (N.D.Ill.);
   *Ryan v. Reynolds Securities, Inc., et al.,* No. 73 C 27 (N.D.Ill.);
   *Ryan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.,* No. 73 C 28 (N.D.Ill.); and
   *Ryan v. F. I. DuPont, Glore Forgan & Co., et al.,* No. 72 C 1612 (N.D.Ill.).

Agreement, plaintiffs abandoned their claims for monetary relief and defendants agreed to "phase-out" minimum commission rates over a 4½-year transitional period. The parties further agreed that "no exchange will increase any minimum rates of commission in effect as of November 1, 1972."

In approving the Master Settlement Agreement, Judge Bauer found that it represented "a fair compromise between the competing positions of the plaintiff class . . . and the participating exchanges and their members . . . . [It] satisfies the desires of the plaintiff class for a complete transition to fully competitive nonmember commission rates, but allows the participating exchanges and their members a reasonable phase-out period to adjust to the elimination of a commission rate structure which has been an integral part of the exchanges' operations for many years."

Accordingly, Judge Bauer entered an order requiring, *inter alia,* that:

"C. Each participating exchange, within sixty days after this order becomes final, is ordered to amend its rules or by-laws to provide that not later than the dates listed in the following schedule, nonmember rates of commission shall be subject to free and open competition on that portion of each commodity transaction . . . exceeding the number of contracts specified opposite such dates:

| Schedule of Dates | That Portion of Each Transaction Exceeding: |
|---|---|
| 60 days after this order approving the settlement becomes final | 24 contracts |
| 1 year thereafter | 19 contracts |
| 2 years thereafter | 14 contracts |
| 3 years thereafter | 9 contracts |
| 4 years thereafter | 4 contracts |

Not later than four and one-half years after this order becomes final, all nonmember rates of commission on commodity transactions on such participating ex-

changes shall be subject to full and open competition.

D. Except as ordered and directed in Paragraph C hereof, each participating exchange is hereby authorized to continue to prescribe and enforce its minimum rates of commission during the above transitional period . . . , provided that no exchange, without court approval, will increase any minimum rates of commission in effect as of November 1, 1972."

Under the district court's order, defendants were released and discharged from all claims for damages and other relief arising under the federal and state antitrust laws which were asserted or could have been asserted on the basis of the facts alleged in the plaintiffs' complaints.

On February 27, 1974, the Board of Trade proposed the adoption by its members of Rule 136 which imposes an "Exchange Service Fee" on both members and nonmembers. On March 14, 1974, Rule 136 was adopted by a vote of the Board of Trade members. The Rule provides that each member handling the funds of nonmember customers shall include, in statements to each customer, an Exchange Service Fee of 25 cents for each Board of Trade futures contract bought, sold or delivered for the account of the nonmember customer. All such fees collected from nonmember customers are to be remitted to the Board and are to be spent "only for purposes determined by the Board to be of substantial benefit to nonmember customers." Rule 136 also provides for the imposition of an Exchange Service Fee upon members of the Board of Trade at a rate of $100.00 per calendar quarter for each membership owned.

On April 19, 1974, plaintiffs filed a motion with the district court requesting an order that the Board of Trade and other defendants show cause why they should not be held in contempt of the court's June 8, 1973 order approving the

Master Settlement Agreement. Plaintiffs contended that the Exchange Service Fee violated that portion of the district court's order which provides that "no exchange, without court approval, will increase any minimum rates of commission in effect as of November 1, 1972." Judge Bauer denied plaintiffs' motion, holding that "Rule 136 from its very language appears to be an 'exchange service fee' and not a specific addition to the nonmember rates of commission." The district court noted that under the Rule a fee is imposed upon both member and nonmember traders in order to help defray operating expenses and capital needs of the Board of Trade. The nonmembers' fees are collected from them by members only because "the Board does not know the identity of nonmember account owners". Noting that Rule 136 requires that the funds collected from nonmembers be used only for those exchange purposes associated with fulfilling the Board's responsibility toward such nonmembers, Judge Bauer held that the Exchange Service Fee "is not a 'nonmember rate of commission' within the meaning or contemplation of this Court's June 8, 1973 Order, since it is not a charge imposed by commission firms for services performed by them, but is a fee imposed by the exchange directly on, and for the ultimate benefit of, nonmember traders." Accordingly, the district court held that Rule 136 "as it is construed does not appear to violate the spirit or letter of this Court's June 8, 1973 Order."

The sole issue on appeal relates to whether the "service fee" imposed under Rule 136 constitutes, within the contemplation of Judge Bauer's June 8, 1973 order, an increase in the minimum rates of commission which were in effect on November 1, 1972. Relying principally on the history of negotiations which led to the Master Settlement Agreement, plaintiffs argue that "the agreement was intended to prevent *any* raise in rates, whether they be 'commission' rates or rates by any other name." Defendants, on the other hand, argue that the dis-

trict court's Order was limited by its express terms to "nonmember rates of commission."

In the district court, plaintiffs sought an order holding the defendants in contempt of court for violating the June 8, 1973 Order. In this posture, Judge Bauer's interpretation of his own Order will not be reversed unless the record clearly shows an abuse of discretion. *Donald F. Duncan, Inc., v. Royal Tops Manufacturing Co., Inc.,* 343 F.2d 669 (7th Cir. 1965). In the instant case, there is ample support for the decision reached by the district judge. In approving the Master Settlement Agreement, Judge Bauer recognized "that the commodity exchanges and futures trading are highly intricate institutions evolved over a period of more than one hundred years, and that minimum commission rules have been an important part of that development from the outset. The full economic implications of eliminating minimum commission rates . . . and the possible need for adjustment in the exchanges' structure and operations appear to be unclear at this point in time. . . . [T]his uncertainty affords independent and additional support for the fairness and reasonableness of the type of ordered phase-out incorporated in the proposed settlement in order to guard against a disruption or impairment of the commodity futures marketing system."

Consistent with this view, the district judge's denial of plaintiffs' motion noted that due "to the phase-out of fixed commission rates, the necessity of shifting part of the costs of the exchange's operations to nonmembers can be reasonably expected in order to reduce the financial burden on nonmembers and the attendant danger of membership attrition." Since the nonmembers' service fee is a charge imposed by the Board and may be used only for the benefit of nonmembers, the district court reasonably concluded that the fee is not a nonmember rate of commission "within the meaning and contemplation" of the June 8, 1973 Order. Rather, Judge Bauer viewed

Rule 136 as a reasonable and appropriate measure to facilitate sharing "the respective costs and expenses of doing business on the exchange."

We believe that the distinction drawn by the district judge between nonmember rates of commission and the service fee imposed under Rule 136 represents a permissible interpretation of his June 8, 1973 Order. Accordingly, we find no abuse of discretion in the district judge's refusal to hold defendants in contempt of that Order, and affirm the denial of plaintiff's motion.

Affirmed.