**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AUTO-OWNERS INSURANCE
COMPANY, a Michigan corporation,

     Plaintiff Counter Defendant –
     Appellee,

v.

SUMMIT PARK TOWNHOME
ASSOCIATION, a Colorado corporation,

     Defendant Counterclaimant.

------------------------------

WILLIAM C. HARRIS; DAVID J.
PETTINATO,

     Appellants.

_____

AUTO-OWNERS INSURANCE
COMPANY, a Michigan corporation,

     Plaintiff Counter Defendant –
     Appellee,

v.

SUMMIT PARK TOWNHOME
ASSOCIATION, a Colorado corporation,

     Defendant Counterclaimant –
     Appellant.

_____

No. 16-1348
(D.C. No. 1:14-CV-03417-LTB)
(D. Colo.)

No. 16-1352
(D.C. No. 1:14-CV-03417-LTB)
(D. Colo.)

**ORDER**

_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **BACHARACH**, Circuit Judges.

_____

These matters are before us, *sua sponte*, to withdraw and amend the decisions issued in these appeals originally on March 23, 2018. Those original opinions are hereby VACATED, and the attached revised opinions shall issue effective the date of this order and with a filing date of today. The Clerk is directed to issue and distribute the amended opinions accordingly.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

2

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

AUTO-OWNERS INSURANCE
COMPANY, a Michigan
corporation,

      Plaintiff Counter Defendant-
Appellee,

v.

SUMMIT PARK TOWNHOME
ASSOCIATION, a Colorado
corporation,

      Defendant Counterclaimant.

_____

WILLIAM C. HARRIS; DAVID J.
PETTINATO,

      Appellants.

No. 16-1348

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CV-03417-LTB)**
_____

George A. Vaka, Vaka Law Group, Tampa, Florida (Michael L. Hutchinson
and Kathleen M. Byrne, Treece Alfrey Musat, P.C., Denver, Colorado, on
the briefs), for Appellants.

Terence M. Ridley (Michael L. O'Donnell, Evan Bennett Stephenson, and
Cedric D. Logan, with him on the brief), Wheeler Trigg O'Donnell LLP,
Denver, Colorado, for Plaintiff Counter Defendant-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

Mr. William Harris and Mr. David Pettinato are two attorneys who represented Summit Park Townhome Association. While representing Summit Park against its insurer, the two attorneys were sanctioned for failing to disclose information. In this appeal, the attorneys challenge the sanctions based on five arguments:

1. The district court lacked authority to require the disclosure requirements.

2. The attorneys did not violate the court's disclosure requirements.

3. The district court awarded attorneys' fees beyond the scope of an earlier sanctions order.

4. The district court's award of attorneys' fees resulted in a deprivation of due process.

5. The amount of attorneys' fees awarded was unreasonable.

We affirm. Regardless of whether the district court had authority to require the disclosures, the attorneys were obligated to comply. They did not, and the district court acted reasonably in issuing sanctions, determining the scope of the sanctions, and calculating the amount of the sanctions.

## I.     Mr. Harris and Mr. Pettinato were sanctioned for failing to comply with the disclosure order.

This appeal grew out of an insurance dispute. Summit Park sustained hail damage and filed a claim with its insurer, Auto-Owners Insurance Company. The parties agreed that damage had occurred but disagreed on the dollar amount of the damage. Auto-Owners sued for a declaratory judgment to decide the value.

Summit Park retained Mr. Harris and Mr. Pettinato, who successfully moved to compel an appraisal based on the insurance policy. In the event of an appraisal, the insurance policy required:

> [E]ach party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Appellee's Supp. App'x, vol. 1 at 123.

Based on continuing disputes between the parties, Auto-Owners asked the district court to resolve these disputes by ordering an "appraisal agreement." The court did so and ordered disclosure of facts potentially bearing on the appraisers' impartiality:

> An individual who has a known, direct, and material interest in the outcome of the appraisal proceeding or a known, existing, and substantial relationship with a party may not serve as an appraiser. Each appraiser must, after making a reasonable inquiry, disclose to all parties and any other appraiser any known facts that a reasonable person would consider likely to

3

affect his or her impartiality, including (a) a financial or personal interest in the outcome of the appraisal; and (b) a current or previous relationship with any of the parties (including their counsel or representatives) or with any of the participants in the appraisal proceeding . . . . Each appraiser shall have a continuing obligation to disclose to the parties and to any other appraiser any facts that he or she learns after accepting appointment that a reasonable person would consider likely to affect his or her impartiality.

Appellants' App'x, vol. 1 at 245-46. The court warned: "Notice is given that, if the court finds that the parties and/or their counsel have not complied with this order, the court will impose sanctions against the parties and/or their counsel pursuant to the court's inherent authority." *Id.* at 248 (capitalization removed).

Before the court imposed these requirements, Summit Park selected Mr. George Keys as its appraiser. This selection led Auto-Owners to express doubt about Mr. Keys's impartiality. But Auto-Owners did not object to Mr. Keys or move to compel further disclosures.

Mr. Keys and the court-appointed umpire agreed on an appraisal award of over $10 million, which was 47% higher than Summit Park's own public adjuster had determined. Auto-Owners then launched an investigation, which culminated in an objection to Mr. Keys. In the objection, Auto-Owners argued that Mr. Keys was not impartial and that Summit Park had failed to disclose evidence bearing on his impartiality. The district court credited these arguments, disqualifying Mr. Keys and vacating the appraisal award.

4

With vacatur of the appraisal award, Auto-Owners moved for sanctions against Mr. Harris and Mr. Pettinato, seeking attorneys' fees and expenses based on violation of the disclosure order. The district court granted the motion, assessing sanctions against Mr. Harris and Mr. Pettinato for $354,350.65 in attorneys' fees and expenses.

## II. Mr. Harris and Mr. Pettinato were bound by the court's disclosure order.

Mr. Harris and Mr. Pettinato challenge the district court's authority to enter the disclosure order. But even if the court had exceeded its authority, Mr. Harris and Mr. Pettinato would still have needed to comply with the disclosure order. If the two attorneys believed that the order had been unauthorized, they could have sought reconsideration or a writ; but they could not violate the order. *See Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").

There is "impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947). The parties agree that the district court had jurisdiction over the subject matter and parties; thus, the attorneys and parties bore an

5

obligation to comply in the absence of an appellate challenge. *See United States v. Beery*, 678 F.2d 856, 866 (10th Cir. 1982) ("Since the court entering these orders had jurisdiction over both the subject matter and [the defendant], [the defendant] was bound by these orders until reversed or otherwise set aside . . . ."); *see also GTE Sylvania, Inc. v. Consumers Union of U.S., Inc*, 445 U.S. 375, 386 (1980) (applying "the established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order"). In light of the duty to comply, violation of the order could trigger sanctions. *See United Mine Workers*, 330 U.S. at 294 (quoting *Howat v. Kansas*, 258 U.S. 181, 190 (1922)).[1]

\* \* \*

---

[1]   In *United Mine Workers*, the Supreme Court observed:

> It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction which events prove was erroneously issued.

330 U.S. at 294-95. But Mr. Harris and Mr. Pettinato have raised no argument based on this language. Thus, we need not consider whether this language would affect the validity of the sanctions against Mr. Harris and Mr. Pettinato.

6

Regardless of whether the district court had authority to issue the disclosure order, Mr. Harris and Mr. Pettinato

- bore an obligation to comply in the absence of an appellate challenge and

- could be sanctioned for noncompliance.

## III.  Mr. Harris and Mr. Pettinato violated the disclosure order.

The district court concluded that the two attorneys had violated the disclosure order. Challenging this conclusion, Mr. Harris and Mr. Pettinato make two arguments:

1.    The district court misinterpreted the term "impartial."

2.    Mr. Harris and Mr. Pettinato disclosed sufficient information about Mr. Keys.

Both arguments fail.

### A.  Standard of Review

We ordinarily review sanctions under the abuse-of-discretion standard. *Russell v. Weicker Moving & Storage Co.*, 746 F.2d 1419, 1420 (10th Cir. 1984) (per curiam). But Mr. Harris and Mr. Pettinato urge a legal error consisting of misinterpretation of the term "impartial." For the challenge involving the meaning of "impartial," we engage in de novo review. *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008). We otherwise confine our review to the abuse-of-discretion standard.

**B.    Mr. Harris and Mr. Pettinato failed to disclose information specified in the disclosure order.**

The district court required disclosure of

- the appraiser's "financial or personal interest in the outcome of the appraisal,"

- any "current or previous relationship" between the appraiser and Summit Park's counsel, and

- any other facts subsequently learned that "a reasonable person would consider likely to affect" the appraiser's impartiality.

Appellants' App'x, vol. 1 at 245-46.

**1.    Mr. Harris and Mr. Pettinato did not disclose the extent of their relationships with Mr. Keys.**

Regardless of whether the district court had correctly defined "impartial," the disclosure order itself was clear in what was required. For example, the order expressly required disclosure of the attorneys' current or previous relationships with the appraiser. The failure to disclose this information constituted a sanctionable violation regardless of the court's interpretation of the word "impartial."

The district court could reasonably find that the two attorneys had failed to disclose the extent of their relationships with Mr. Keys. For example, the attorneys failed to disclose that

- other attorneys in their law firm (the Merlin Law Group) had worked with Mr. Keys on appraisals for at least 33 clients,

- Merlin attorneys had represented Mr. Keys on various matters for over a decade,

- Merlin's founder and Mr. Keys had co-founded a Florida lobbying operation, whose "number one goal [was] to protect policyholders and the public adjusting profession," Appellee's Supp. App'x, vol. 4 at 812, and

- Merlin attorneys had served as the incorporator and registered agent for one of Mr. Keys's companies.[2]

Mr. Harris and Mr. Pettinato argue that their disclosures were sufficient. They made two disclosures:

---

[2] The district court also pointed out that Mr. Harris and Mr. Pettinato had failed to disclose a contingent-fee cap in Mr. Keys's original contract. Auto-Owners asked Mr. Harris in writing for all "drafts, additions, amendments and/or revisions" of the agreement with Mr. Keys. Appellee's Supp. App'x at 828. Mr. Harris responded that he would bring a copy of the agreement, implying that no other drafts existed. *Id.* at 827.

Mr. Harris furnished the final version of the agreement, leading Auto-Owners to ask Summit Park's former president whether the agreement had ever been revised. He responded: "Not to my knowledge." *Id.* at 800. Mr. Harris and Mr. Pettinato later excused this statement on the ground that the former president had not been involved in the discussions with Mr. Keys regarding his contract. But Mr. Harris and Mr. Pettinato were intimately involved in those discussions, and Mr. Harris—who was accompanying the former president at the time—said nothing to correct the false statement. Instead, Mr. Harris and Mr. Pettinato waited until after completion of the appraisal to disclose the existence of a prior version of Mr. Keys's agreement.

With this disclosure, Auto-Owners learned that Mr. Keys had earlier worked under a contingent-fee cap, which raised his maximum fee based on the total amount recovered by Summit Park. This information revealed another false statement by Mr. Harris himself. While the contingent-fee cap had been in place, Mr. Harris represented to Auto-Owners that Mr. Keys had "no financial interest in the claim." *Id.* at 327. This representation was false: at the time, the contingent-fee cap created a financial interest by allowing Mr. Keys to earn a greater fee based on the amount of the appraisal. Auto-Owners had no way of learning that the representation was false, however, until Mr. Harris eventually disclosed the existence of an earlier version of the agreement.

9

1.    "Mr. Keys does not have any significant prior business relationship with [Merlin], Summit Park, or C3 Group. Mr. Keys has acted as a public adjuster and/or appraiser on behalf of policyholders that [Merlin] has represented in the past, however, this obviously does not affect his ability to act [as] an appraiser in this matter." Appellant's App'x, vol. 2 at 292.

2.    "Mr. Keys has acted as a public adjuster and/or appraiser on behalf of policyholders that [Merlin] has represented in the past. Mr. Keys has no financial interest in the claim, and has no previous relationship with the policyholder in this matter." *Id*. at 298.

In addition, Mr. Keys disclosed:

I do not have a material interest in the outcome of the Award and have never acted either for or against Summit Park Townhome Association. My fee agreement is based upon hourly rates plus expenses... I do not have any substantial business relationship or financial interest in [Merlin]. There have been cases where both [Merlin] and Keys Claims Consultants acted for the same insured but under separate contracts.

*Id*. at 307-08.

Mr. Harris and Mr. Pettinato make two defenses of their disclosures:

1.    They disclosed enough information about Mr. Keys's impartiality.

2.    Mr. Harris and Mr. Pettinato lacked personal knowledge about the undisclosed facts.

These arguments fail.

First, the district court acted within its discretion in concluding that Mr. Harris and Mr. Pettinato had failed to disclose the extent of their relationships with Mr. Keys. The two attorneys disclosed only that Mr. Keys had worked as an appraiser on behalf of Merlin's clients, and Mr.

10

Keys stated that he lacked a substantial business relationship with Merlin. The district court could reasonably find that these disclosures had failed to provide meaningful information about the extent of the relationships between the two attorneys and Mr. Keys.

Second, Mr. Harris and Mr. Pettinato cannot avoid sanctions based on their asserted lack of knowledge about Mr. Keys's contacts with other Merlin attorneys. Mr. Harris and Mr. Pettinato knew about some of the contacts, as reflected in Mr. Pettinato's description of his firm's connection with Mr. Keys: "Both Mr. Keys and his staff have assisted me as well as my firm in resolving an untold number of large multi-million dollar losses to an amicable resolution and settlement to the policyholders' benefit and satisfaction." Appellee's Supp. App'x, vol. 4 at 704. In addition, however, Mr. Harris and Mr. Pettinato bore an obligation to make "a reasonable inquiry." Appellant's App'x, vol. 2 at 245. In light of this obligation, Mr. Harris and Mr. Pettinato could not profess ignorance while failing to inquire about contacts with other Merlin attorneys.

In these circumstances, the district court acted within its discretion in finding a failure to disclose the extent of the relationships between the two attorneys and Mr. Keys.

11

### 2. Mr. Harris and Mr. Pettinato distort the effect of the district court's definition of "impartial."

The district court required disclosure not only of the appraiser's relationship with counsel but also of known facts that a reasonable person would consider likely to affect the appraiser's impartiality. This part of the disclosure requirement was tied to the court's definition of the term "impartial."

Mr. Harris and Mr. Pettinato focus on the court's definition of "impartial," arguing that it was wrong and that the court failed to adequately inform Mr. Harris and Mr. Pettinato of the scope of their obligations. But in the disclosure order itself, the court stated what it meant by "impartial": "An individual who has a known, direct, and material interest in the outcome of the appraisal proceeding or a known, existing, and substantial relationship with a party may not serve as an appraiser." *Id.* at 245. Because the court stated precisely what it meant by "impartial," Mr. Harris and Mr. Pettinato knew what was required. And as we have discussed, Mr. Harris and Mr. Pettinato could not disobey the order even if the court had based the disclosure requirements on a misguided definition of "impartial."[3]

---

[3] The district court ultimately held not only that the undisclosed facts would likely affect a reasonable person's consideration of Mr. Keys as impartial (requiring disclosure), but also that Mr. Keys was ineligible to serve as an appraiser because of his partiality (requiring vacatur of the

### 3. The district court reasonably found a violation of the disclosure order tied to this test of "impartial."

Based on this definition, the district court required disclosure of any facts that a reasonable person would view as likely to affect the appraiser's impartiality. Mr. Harris and Mr. Pettinato argue that evidence of an appraiser's advocacy was unlikely to affect the appraiser's impartiality. *See Owners Ins. Co. v. Dakota Station II Condominium Ass'n*, 2017 WL 3184568, at \*4 (Colo. App. July 27, 2017), *cert. granted*, 2018 WL 948601 (Colo. Feb. 20, 2018). For the sake of argument, let's assume that Mr. Harris and Mr. Pettinato are right. Still, the district court could reasonably view Mr. Keys's undisclosed prior statements as likely to affect his impartiality based on a known, direct, and material interest in the outcome.

For example, in a presentation to a group of public adjusters in Florida, Mr. Keys taught participants how to "harvest the claim money" from an insurer during an appraisal. Appellants' App'x, vol. 2 at 342. And one of Mr. Keys's companies maintains a website stating: "Our purpose is simple: To shift the balance of power from the insurer to the policy holder . . . ." Appellee's Supp. App'x, vol. 4 at 729. The district court could

---

appraisal award). In vacating the appraisal award, the court expanded upon its definition of "impartial." Vacatur of the appraisal award led to sanctions against Summit Park but not against Mr. Harris or Mr. Pettinato. These two individuals were sanctioned for violating the disclosure order, not selecting a biased appraiser.

13

reasonably view these undisclosed statements as proof of a material interest in an outcome favoring the policyholder over the insured.

Evidence also suggests that Mr. Harris and Mr. Pettinato were aware of Mr. Keys's bias. For example, in an advertisement on Mr. Keys's website, Mr. Pettinato endorsed Mr. Keys, saying: "Both Mr. Keys and his staff have assisted me as well as my firm in resolving an untold number of large multi-million dollar losses to an amicable resolution and settlement to the policyholders' benefit and satisfaction." *Id.* at 704. And a profile on Merlin's website reported that Mr. Keys "ha[d] dedicated his professional life to being a voice for policyholders in property insurance claims." *Id.* at 723. In this profile, Mr. Keys stated: "I was taught to always handle a claim as if my momma was the insured." *Id.*

\* \* \*

In sum, the district court did not abuse its discretion in finding that Mr. Harris and Mr. Pettinato had violated the disclosure order.

## C.     Waiver

Mr. Harris and Mr. Pettinato contend that Auto-Owners waived its objection to the sufficiency of the disclosures by failing to object despite knowledge of Mr. Keys's relationship with Merlin and past expressions of bias toward policyholders. We disagree. Auto-Owners had some knowledge about Mr. Keys's bias but did not know much of what had been withheld.

14

Without full knowledge of the undisclosed information, Auto-Owners did not waive its right to seek sanctions for nondisclosure.

## IV. The district court reasonably interpreted the scope of its sanctions order.

In sanctioning the two attorneys, the court invoked 28 U.S.C. § 1927. Under § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Applying this statute in the sanctions order, the court found that Mr. Harris and Mr. Pettinato had unreasonably prolonged the proceedings:

> I note that Section 1927 indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders. With this purpose in mind, I reject Auto-Owners' request for fees for proceedings in this Court that relate to conducting the appraisal process and conducting the appraisal process itself because Auto-Owners would have incurred these fees regardless of Harris' and Pettinato's misconduct. I grant the request, however, as to Auto-Owners' investigation into George Keys and its objections to his participation in the appraisal, as this work would not have taken place in the absence of Harris' and Pettinato's misconduct. The award shall be assessed against Harris and Pettinato jointly and severally.

Appellants' App'x, vol. 3 at 607 (citations & internal quotation marks omitted).

Mr. Harris and Mr. Pettinato challenge the scope of this order. They concede that the award covered Auto-Owners' objection to Mr. Keys

15

($186,705.50) and investigation of Mr. Keys ($33,805). But the attorneys

disagree with the inclusion of attorneys' fees for

- Auto-Owners' preparation of the motion for sanctions ($51,309.50),

- Auto-Owners' preparation of the application for attorneys' fees and expenses ($16,960.50), and

- Auto-Owners' other related work ($61,662.50).

According to Mr. Harris and Mr. Pettinato, these activities fell outside of

the initial sanctions order. We disagree.

In setting attorneys' fees following the sanctions order, the district

court explained:

> Thus, viewed properly in its context, my award encompasses any fees incurred as a result of Harris' and Pettinato's misconduct. The fees requested by Auto-Owners for work on the third amended petition, the reservation of rights letter, and other matters described in the detailed billing records would not have been incurred but for Harris' and Pettinato's misconduct. I therefore conclude they are within the scope of the award.

Appellants' App'x, vol. 3 at 671. We give deference to the district court's

interpretation of its own order. *See, e.g.*, *Chi., Rock Island & Pac. R.R. v.*

*Diamond Shamrock Ref. & Mktg. Co.*, 865 F.2d 807, 811 (7th Cir. 1988)

("We shall not reverse a district court's interpretation of its own order

'unless the record clearly shows an abuse of discretion.'" (quoting *Arenson*

*v. Chicago Mercantile Exch.*, 520 F.2d 722, 725 (7th Cir. 1975))).

16

With such deference, we conclude that the district court reasonably interpreted its prior sanctions order. The sanctions order had noted that § 1927 was designed "'to compensate victims of abusive litigation practices.'" Appellants' App'x, vol. 3 at 607 (quoting *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205 (10th Cir. 2008)). In light of this purpose, the court interpreted its sanctions order against Mr. Harris and Mr. Pettinato as encompassing all of the attorneys' fees and expenses resulting from violation of the disclosure order. *Id.* This interpretation was reasonable.

The sanctions order expressly included the investigation of and objection to Mr. Keys. But the district court could reasonably interpret the sanctions order to go beyond the investigation and objection. If Mr. Harris and Mr. Pettinato had not violated the disclosure order, Auto-Owners would not have had to move for sanctions, seek attorneys' fees and expenses, and complete other work. As a result, the district court could reasonably consider these litigation expenses as the product of the two attorneys' misconduct. In these circumstances, it was reasonable for the district court to conclude that the earlier sanctions order had encompassed attorneys' fees and expenses from the motion for sanctions, application for attorneys' fees and expenses, and related work involving the motion and application.

17

**V.** **The district court did not deprive the two attorneys of due process.**

Alternatively, Mr. Harris and Mr. Pettinato assert a deprivation of due process based on an inability to respond to the district court's inclusion of litigation activities outside of the initial sanctions order. We disagree.[4] Auto-Owners filed an application for attorneys' fees, and Mr. Harris and Mr. Pettinato had an opportunity to respond. In the response, they could have objected to any of the attorneys' fees being sought. This opportunity supplied due process. *See Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995) ("[T]he opportunity to fully brief the issue is sufficient to satisfy due process requirements."); *see also Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, No. 16-1352, slip op. at 17-19 (10th Cir. Mar. 30, 2018) (to be published) (discussing a similar argument made by Summit Park Townhome Association).

---

[4] Mr. Harris and Mr. Pettinato did not make this argument in district court. Thus, Auto-Owners argues that the argument was forfeited. *See Richison v. Ernest Grp.*, 634 F.3d 1123, 1128 (10th Cir. 2011). Mr. Harris and Mr. Pettinato disagree, contending that they had no contemporaneous opportunity to object to the due-process violation because they learned of it only when they received the district court's written order. We may assume, for the sake of argument, that Mr. Harris and Mr. Pettinato did not forfeit their due-process challenge.

## VI. The amount of attorneys' fees awarded was reasonable.

Mr. Harris and Mr. Pettinato also argue that the court awarded an unreasonable amount of attorneys' fees. We disagree.

We review a determination of attorneys' fees for an abuse of discretion. *See AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997). In applying the abuse-of-discretion standard, we consider whether the district court's determination appears reasonable in light of the complexity of the case, the number of strategies pursued, and the responses necessitated by the other party's maneuvering. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). But we do not require the district court to identify and justify every hour allowed or disallowed. *See Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).

The district court closely reviewed the information in Auto-Owners' request for fees, determining that most of the fee requests were reasonable given

- the circumstances of the case,

- the hourly rates prevailing in the community, and

- the use of billing judgment.

First, the district court concluded that it was reasonable for Auto-Owners' counsel to spend long hours because "Auto-Owners had over $30 million at stake" and the issues were complex. Appellants' App'x, vol. 3 at 673-74. This conclusion was reasonable.

19

Second, the court considered the local market, the qualifications of the attorneys, and the contentiousness of the litigation. These considerations led the district court to find that the billing rates had been reasonable. In our view, this finding was permissible under the record.

Third, the court considered the use of billing judgment by Auto-Owners' counsel through concessions such as staffing with lower-billing attorneys, declining to charge for all hours worked, and discounting hours worked by paralegals and secretaries.[5] The district court acted reasonably in considering these concessions.

For these three reasons, we conclude that the district court did not abuse its discretion in calculating the amount of the sanction ($354,350.65).[6]

## VII. Conclusion

The district court did not err in sanctioning Mr. Harris and Mr. Pettinato. Regardless of the validity of the disclosure order, compliance was required in the absence of an appellate challenge. Mr. Harris and Mr. Pettinato violated the order by failing to disclose information bearing on

---

[5]    The district court ultimately reduced Auto-Owners' fees by $1,098 for one duplicate entry and one vague entry.

[6]    Alternatively, Mr. Harris and Mr. Pettinato urge reversal for more specific findings. But the district court supported its award with detailed findings. Mr. Harris and Mr. Pettinato do not say what other findings should have been made.

Mr. Keys's impartiality. In light of this violation, the district court had the discretion to sanction Mr. Harris and Mr. Pettinato and set a reasonable amount. We therefore affirm the assessment of sanctions.