**NOT FOR PUBLICATION**



# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1144-KuTaF |
| | CC-18-1160-KuTaF |
| ELAINE MARIE ROACH, | (related) |
| Debtor. | Bk. No. 8:17-bk-12091-TA |
| ELAINE MARIE ROACH, | |
| Appellant, | |
| v. | **MEMORANDUM**<sup>*</sup> |
| RICHARD A. MARSHACK, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on January 24, 2019
at Pasadena, California

Filed – January 29, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

---

    <sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:     William Miles Burd of Ringstad & Sanders LLP argued for appellant Elaine Marie Roach; David Edward Hays of Marshack Hays LLP argued for appellee Richard A. Marshack, Chapter 7 Trustee.

———

Before: KURTZ, TAYLOR, and FARIS, Bankruptcy Judges.

Chapter 7[1] debtor, Elaine Marie Roach, appeals from the bankruptcy court's orders approving the motions filed by the chapter 7 trustee, Richard A. Marshack (Trustee) to: (1) sell Ms. Roach's property (Property) free and clear of liens (Sale Order) (BAP No. 18-1144) and (2) distribute the sale proceeds with payment in full to the first and second lien holders with the remaining proceeds split evenly between the estate and Mutual of Omaha Bank (Omaha Bank) pursuant to a court-approved compromise (Distribution Order) (BAP No. 18-1160). We AFFIRM both orders on appeal.

## FACTS

### A.     Prebankruptcy Events

Ms. Roach was the president and owner of Sesa, Inc. (Sesa), a California corporation. In 2012, Sesa borrowed $937,000 from Omaha Bank. Ms. Roach signed a guaranty of Sesa's obligation which was secured by a

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

third deed of trust against her Property. Sesa defaulted on the loan in November 2016 and soon after closed its doors.

**B. Bankruptcy Events**

In May 2017, Ms. Roach filed a chapter 7 petition. Mr. Marshack was appointed chapter 7 trustee.

In amended schedules, Ms. Roach valued her Property at $1.2 million and listed four secured creditors who held liens against the Property in the total amount of $1,550,095.89: (1) Citimortgage, Inc. - $426,645.17; (2) Bank of America - $468,619.61; (3) Omaha Bank - $634,831.11; and (4) Merhab Robinson, Jackson & Clarkson (Merhab) - $20,000. In amended Schedule C, Ms. Roach claimed a homestead exemption in the amount of $75,000. The deadline for objecting to her homestead exemption passed without objection.

Ms. Roach did not schedule any litigation claims against Omaha Bank in either her original schedules or her amended schedules but testified at the initial meeting of creditors that she may have such claims against Omaha Bank or its attorney for alleged improper conduct and threats (Litigation Claims).

**1. Trustee's Compromise With Omaha Bank**

Trustee filed a motion seeking an order approving a compromise of the Litigation Claims with Omaha Bank under Rule 9019. The compromise included the following provisions:

3.1 Subordination of one-half of [Omaha Bank's] Claim: Pursuant to § 510(c)(1), [Omaha Bank] agrees to subordinate 50% of its [Omaha Bank] secured claim to be treated as a general unsecured claim. The other half of the secured [Omaha Bank] Claim shall retain the same validity, priority, and extent that would otherwise exist under California law. Upon a sale of the Property, and after all costs of sale have been paid, senior liens including the approximate $465,000 owed to Bank of America and the approximate $412,000 claim owed to Citimortgage will be paid with the balance otherwise owed to [Omaha Bank] to be split evenly between Omaha Bank and the Estate;

3.2 The lien securing the subordinated portion of [Omaha Bank's] Claim shall be transferred to the Estate. Pursuant to § 510(c)(2), the lien securing the subordinated half of the [Omaha] Bank's claim would be transferred to the Estate with the Estate receiving all associated rights held by [Omaha] Bank as to the subordinated half of [Omaha] Bank's claim.

. . .

3.4 Release of Estate Claim. In consideration of the subordination provisions of the Agreement, the Estate releases [Omaha Bank], its officers, directors, shareholders, representatives, employees, lawyers, including the law firm of Mirman, Bubman, & Nahmias, LLP and its attorneys, shareholders, officers, directors, and employees, of any liability arising out of or related to the alleged Litigation Claim.

In a footnote, Trustee explained that he did not believe the subordination provisions set forth in the agreement constituted a "carve-

4

out" subject to the standards set forth in *In re KVN Corporation*, 514 B.R. 1, 8 (9th Cir. BAP 2014). He asserted, however, that even if considered a carve-out, those standards were met; i.e.: (1) Trustee fulfilled his basic duties; (2) there was a benefit to the estate because up to $317,500 would be distributed; and (3) the terms of the carve-out agreement were fully disclosed to the bankruptcy court.

Although Ms. Roach did not file a written opposition to the compromise, her newly hired counsel appeared at the hearing. New counsel advised the bankruptcy court that Ms. Roach did not believe she had any claims against Omaha Bank or its counsel and, therefore, she did not object to the release of those claims. However, Ms. Roach argued that approval of a carve-out agreement with Omaha Bank was premature until there was an actual offer on the Property; only then could the court determine whether a meaningful distribution to unsecured creditors would be made.

In December 2017, the bankruptcy court approved the compromise. No appeal was taken, and the order became final.

**2. Trustee's Motion to Sell Real Property and Motion to Distribute the Proceeds of the Sale**

Trustee filed a motion to sell the Property for $1.3 million and a motion to distribute the proceeds of the sale. Trustee proposed to pay the senior first and second liens in full, current property taxes, a broker's

commission, and title and escrow fees. He then proposed to split the remaining proceeds evenly between Omaha Bank and the bankruptcy estate based on the court-approved compromise. Trustee explained that the estate was projected to receive approximately $160,000 from the sale proceeds, which was sufficient to pay administrative claims capped at $100,000, priority claims of $31,700 in full, and to make pro rata distributions to general unsecured creditors. Trustee proposed to reduce his and his firm's administrative fees such that at least $18,520 or about 15% would be distributed to unsecured creditors.

Because the sale proceeds would be exhausted by the first three deeds of trust recorded against the Property, Trustee maintained that there would be no proceeds available to pay any portion of the fourth deed of trust held by Merhab or anything to Ms. Roach on account of her homestead exemption.

In addition, Trustee argued that Ms. Roach could not claim an exemption against the projected $160,000 recovered pursuant to the subordination agreement with Omaha Bank because such a claim would be prohibited by § 522(g). That statute provides that exemptions in property recovered by a trustee under § 510(c)(2) may only be claimed where the recovered property was not voluntarily transferred by the debtor. Here, Ms. Roach had voluntarily transferred an interest in her Property to Omaha Bank as security for its loan made to Sesa.

Ms. Roach objected to Trustee's motions on the grounds, among others, that Trustee was improperly attempting to sell the Property without paying her on account of her homestead exemption and that the sale failed to meet the *KVN* standards for approval of a carve-out agreement. Ms. Roach further argued that the funds going to the estate as part of the carve-out were proceeds from the sale of her Property and subject to her homestead exemption under the holdings in *In re Wilson,* 492 B.R. 502, 506 (Bankr. C.D. Cal. 2013), and *In re Reade,* 2014 WL 1329808 (Bankr. C.D. Cal. 2014). Finally, Ms. Roach maintained that Trustee's § 522(g) argument was "nonsensical" since that section applies to property which was voluntarily transferred by the debtor and has been recovered by the trustee. Here, Trustee had recovered nothing.

The bankruptcy court issued a tentative ruling, granting Trustee's motions. The court found that *In re Wilson* and *In re Reade* were factually and legally distinguishable from the instant case because in this case there was an assignment of Omaha Bank's lien to the estate as part of the court-approved compromise. The court noted that homesteads cannot be used to trump voluntary liens and there was no reason that should change just because a lien is assigned to the estate. The court further found that the previously approved compromise met all the requirements of *KVN* and noted that the 15% distribution to unsecured creditors was not de minimus. Finally, the bankruptcy court agreed with Trustee that Ms. Roach

7

voluntarily liened the Property for far more than its value. Accordingly, there was no legal or equitable reason for allowing Ms. Roach to receive proceeds, at the expense of her creditors, that Trustee was able to pry out of the Property.

At the hearing on the matter, the court considered whether the subordination provisions constituted a carve-out agreement or an assignment of the money portion of Omaha Bank's lien. The court acknowledged that the agreement between the parties was unclear as to what portion of Omaha Bank's lien was subordinated, but the court did not find the agreement fatally vague. When reading all the motions and orders together, the bankruptcy court found that it was clear there was an assignment to the bankruptcy estate consisting of one-half of the money portion of Omaha Bank's lien such that monies owed to Omaha Bank would be evenly split between Omaha Bank and the estate. In the end, the court found the assignment of the lien made this case different from the carve-out cases. The bankruptcy court granted Trustee's motions and entered orders accordingly. Ms. Roach filed a single notice of appeal from those orders.

C.    **Post-appeal Events**

By order, the Panel required Ms. Roach to file a separate appeal and pay a separate filing fee for each order so that the appeals would proceed as separate matters. The appeal of the Distribution Order was assigned

BAP No. 18-1160.

Trustee moved to dismiss the appeal of the Sale Order (BAP No. 18-1144), arguing that it was moot because escrow had closed, there was no stay pending appeal, and the buyers qualified as good faith purchasers under § 363(m). The Panel denied the motion, finding that effective relief could be granted because the Sale Order granted two types of relief: it approved a sale and it allocated the proceeds. The Panel found that the portion of the order concerning the actual sale transaction was moot since the sale of the Property was made to a good faith purchaser and was not stayed pending appeal. *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)* 163 F.3d 570, 576 (9th Cir. 1998). However, the Panel found that the appeal as to the second relief was not moot because the proceeds had not been distributed (and even if they had, such proceeds could be recovered). Accordingly, the Panel denied the motion without prejudice to reconsideration by the merits panel assigned to this appeal.[2]

---

[2] Generally, a merits panel is not bound by the decisions of a motions panel. *Stagecoach Utils., Inc. v. Cty. of Lyon (In re Stagecoach Utils., Inc.)*, 86 B.R. 229, 230 (9th Cir. BAP 1988). We see no reason to reconsider the decision made by the motions panel. The scope of our review in these related appeals is limited to the bankruptcy court's decision regarding the distribution of the sale proceeds.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in concluding that Ms. Roach was not entitled to claim a homestead exemption in the estate's share of proceeds received from the sale of her Property due to Omaha Bank's assignment to the estate one-half of the money portion of its lien.

## STANDARD OF REVIEW

We review a bankruptcy court's interpretation of its own order for an abuse of discretion. *Rosales v. Wallace (In re Wallace)*, 490 B.R. 898, 906 (9th Cir. BAP 2013) (citing *Arenson v. Chicago Mercantile Exch.*, 520 F.2d 722, 725 (7th Cir.1975)); *see also Hallett v. Morgan*, 296 F.3d 732, 739–40 (9th Cir. 2002) (special consideration is given to the trial court's interpretation of its own orders); *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 941 (4th Cir.1997) (the bankruptcy judge who has presided over a case from its inception is in the best position to clarify the court's rulings).

A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

These appeals are about Ms. Roach's homestead exemption in proceeds received by the bankruptcy estate after the sale of her Property. In California, the homestead exemption may exceed home equity on the petition date. *Wilson v. Rigby (In re Wilson)*, 909 F.3d 306, 310 (9th Cir. 2018). The allowed amount of the debtor's homestead is determined when the subject property is sold rather than being fixed as of the date the debtor files bankruptcy. *Robertson v. Alsberg (In re Alsberg)*, 161 B.R. 680, 684 (9th Cir. BAP 1993), *aff'd* 68 F.3d 312 (9th Cir. 1995). In this case, the disbursement of proceeds is a result of the bankruptcy court's order approving the compromise between Omaha Bank and Trustee. That order became a final order after the time for appeal passed. Accordingly, we cannot address whether the approval of the compromise or the distribution of proceeds was appropriate or not.

Further, in ruling on Trustee's motions, the bankruptcy court re-examined the meaning of the compromise agreement to determine whether the subordination provisions constituted a carve-out agreement or an assignment of the money portion of Omaha Bank's lien. The bankruptcy court found that although the agreement was unclear as to what portion of Omaha Bank's lien (i.e., the unsecured portion or the secured portion) was subordinated, the agreement was not fatally vague. The bankruptcy court concluded that reading all the motions and orders together, it was clear

11

that there was an assignment to the bankruptcy estate consisting of one-half of the money portion of Omaha Bank's lien such that monies owed to Omaha Bank would be evenly split between Omaha Bank and the estate.

"'We owe substantial deference to the bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced that it amounts to an abuse of discretion.'" *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011) (quoting *Ill. Inv. Trust No. 92 7163 v. Allied Waste Indus., Inc. (In re Resource Tech. Corp.)*, 624 F.3d 376, 386 (7th Cir. 2010)). The bankruptcy court was in the best position to construe the subordination provisions in the compromise agreement. Considering the record and the plain text of the compromise, we are not convinced that the bankruptcy court's interpretation was an abuse of discretion. Because Omaha Bank assigned the money portion of its lien to the bankruptcy estate, the bankruptcy court properly determined that under the terms of the compromise, Ms. Roach was not entitled to claim a homestead exemption in the sale proceeds attributed to the transferred lien.

## CONCLUSION

For these reasons, we AFFIRM both orders on appeal.